UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SUPPRESSED

FILED

APR 13 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| SHAUN R. HAYES and ) | **4:16CR00157 AGF/DDN** |
| MICHAEL H. LITZ, ) | |
| ) | |
| Defendants. | |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

### INTRODUCTION

At all times relevant to this indictment:

**Excel Bank**

1. Excel Bank was a financial institution and insured bank, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC). Excel Bank was chartered by the State of Missouri. Excel Bank was the wholly-owned subsidiary of Investors Financial Corporation of Pettis County, Inc., (IFC) a Missouri corporation and registered bank holding company. Excel Bank was headquartered in Sedalia, Missouri, and principally served that geographic area.

2. In or about October, 2007, Shaun R. Hayes purchased a majority and controlling stock interest in IFC and, as a result, he exercised substantial control over the affairs of Excel Bank. He was installed as a director and vice chairman of IFC and he became a paid consultant for

1

Excel Bank. At the direction of Shaun Hayes, Excel Bank opened a Loan Production Office (LPO) in Clayton, Missouri, through which commercial real estate and other loans were solicited and processed.

3. Shaun Hayes exercised control over the lending activities of the LPO in Clayton. Shaun Hayes hired Timothy P. Murphy, a prior banking associate, as the primary loan officer at the Clayton LPO. With the support of Shaun Hayes, Timothy Murphy became an executive vice president of the bank. Timothy Murphy worked under the direction and control of Shaun Hayes.

4. Under Shaun Hayes's direction, the commercial lending activity of Excel Bank dramatically increased as a result of loans generated at the Clayton LPO. By 2009, the outstanding commercial real estate loan balances at Excel Bank had doubled. Loans supported by Shaun Hayes were routinely approved at Excel Bank. These so-called "Friend of Shaun" loans were often approved absent the normal underwriting protections designed to safeguard the soundness of the bank. These safeguards include consideration of payment history, appraisals and status of real estate taxes due on underlying security, lending limit for a particular borrower and whether an insider, such as Shaun Hayes, has an interest in the loan transaction. FDIC examiners determined that a number of the substantial loans generated at the Clayton LPO were substandard and were made through unsafe banking practices. Excel Bank's position as the lender was often not protected through public recording of notes and assignments against the underlying property serving as security for the note.

5. In an FDIC examination occurring in October, 2009, Excel Bank was downgraded to the status of a problem bank due to deficiencies in its lending practices.

6. In May, 2009, IFC received $4,000,000.00 in funds from the Troubled Asset Relief Program (TARP) which was designed to restore liquidity and stability to the financial system in the wake of the financial crisis.

7. In October, 2012, Excel Bank was closed by the Missouri Division of Finance and the FDIC was named as the receiver. The bank was closed as a result of the finding that its financial condition was critically deficient. Millions of dollars in loans were written off as losses and Excel Bank failed to make most of the payments required under the TARP program.

### McKnight Man and the Eighteen Investments Loan Pools

8. Shaun Hayes and Michael Litz were co-owners of McKnight Man I LLC (McKnight Man) and, in July, 2009, Centrue Bank was threatening to sue Shaun Hayes and Michael Litz as guarantors on the bank's loan to McKnight Man. With interest, the delinquency on the McKnight Man loan was approximately $900,000.00. Shaun Hayes listed McKnight Man on his conflicts list at Excel Bank. Under state and federal regulations, a loan for the benefit of McKnight Man could not be lawfully made without the prior approval of the board of directors at Excel Bank because of Shaun Hayes's insider status.

9. In July, 2009, Eighteen Investments, which was a commercial and residential real estate firm owned in part by Michael Litz, was delinquent on millions of dollars in loans at numerous financial institutions in the St. Louis area and elsewhere. Eighteen Investments was delinquent on approximately $3,694,765.66 in real estate loans at Centrue Bank and approximately $12,900,000.00 in real estate loans at National City Bank.

10. In July, 2009, Eighteen Investments was delinquent on $2,685,000.00 in loans at Excel Bank. As of July, 2009, the lending limit at Excel Bank for Eighteen Investments was approximately $5,200,000.00. In the FDIC examination of October, 2009, approximately

3

$2,300,000.00 of the Eighteen Investments loans at Excel Bank were adversely classified as substandard.

11. On or about June 30, 2009, Centrue Bank brought suit in St. Louis County against Eighteen Investments, Michael Litz and others. The suit sought damages in the amount of $3,896,355.35.

12. In July and August, 2009, Shaun Hayes negotiated with Centrue Bank to purchase the pool of Eighteen Investments loans from the bank. Shaun Hayes and Michael Litz also sought to prevent Centrue Bank from suing them on the McKnight Man loan. Centrue Bank agreed to sell the pool of Eighteen Investments loans at a discount but required the McKnight Man loan to be purchased at par or full value.

13. On or about August 27, 2009, Shaun Hayes caused Timothy Murphy to sign an agreement in which Excel Bank agreed to purchase from Centrue Bank twenty-one of Eighteen Investments loans at a cost of $2,400,000.00. Shaun Hayes and Timothy Murphy did not seek or obtain approval of this agreement from the loan committee or the board of directors at Excel Bank. Delinquent real estate taxes were due on many of the underlying properties. This transaction was completed at the direction of Shaun Hayes and underwriting safeguards were not taken on behalf of Excel Bank. This transaction was not reflected in the records of Excel Bank. The ownership interest of Excel Bank in these notes and deeds of trust was not protected by the public recording of that interest against the properties serving as security for each of the notes.

14. In July and August, 2009, in an effort to generate funds to pay Centrue Bank, Michael Litz persuaded LS to serve as a straw party for purposes of issuing a loan at Excel Bank in LS's name. LS was very creditworthy and already had one loan at Excel Bank. On or about August 26, 2009, LS signed a promissory note and a Commercial Security Agreement which

4

showed him borrowing $3,344,528.27 from Excel Bank secured by the assignment of notes and deeds of trust on properties, plus thirteen second deeds of trust and a junior lien on the residence of Michael Litz. There was no reference to Eighteen Investments in the note and Commercial Security Agreement. The loan was for a 30-day period. Michael Litz assured LS that they would sell the properties to pay off the note and that he would be paid $25,000.00 in the transaction. Michael Litz further assured LS that he would not be held responsible for this loan. There was no public recording of the purported assignments of notes and deeds of trust to LS.

15. On or about August 27, 2009, Timothy Murphy, acting with the full knowledge of Shaun Hayes, presented a loan in the name of LS to the loan committee at Excel Bank. Timothy Murphy represented that LS was using the proceeds of the loan to buy twenty-one notes and deeds of trust at a discount. As Shaun Hayes well knew and caused to be concealed from the loan committee, he and Timothy Murphy had obligated Excel Bank to buy the notes and deeds of trust from Centrue Bank and the LS loan was designed to generate the money for that purchase. Excel Bank funds from the LS loan in the amount of $2,403,569.00 were paid to Centrue Bank. The notes and deeds of trust were never assigned to LS.

16. On or about August 12, 2009, Shaun Hayes caused Excel Bank to purchase the pool of Eighteen Investments loans at National City Bank at a discount. Shaun Hayes caused Timothy Murphy to sign the contract in which Excel Bank purchased the pool. Shaun Hayes and Timothy Murphy did not seek or obtain the approval for this agreement from the loan committee or the board of directors of Excel Bank. The transaction was not reflected on the books of Excel Bank. Shaun Hayes caused funds totaling approximately $8,800,000.00 to be loaned by Excel Bank to three additional individuals to pay National City Bank on the agreement with Excel Bank.

17. Shaun Hayes caused the purchases of the pools of loans by Excel Bank to be concealed from the bank's board of directors because, as a result of the purchases, Excel Bank's exposure on the Eighteen Investments properties increased, in fact, to approximately $14,700,000.00 which far exceeded the allowable lending limit of approximately $5,200,000.00.

18. At the direction of Shaun Hayes, the remaining proceeds from the LS loan in the amount of $906,223.38 were paid to Centrue Bank to pay off the McKnight Man loan at that bank. This payment constituted a misapplication of Excel Bank funds and unlawful self-dealing by Shaun Hayes, an insider who, in fact, had substantial control over loan transactions at Excel Bank. Shaun Hayes structured this aspect of the LS loan transaction so that there would be no record at Excel Bank reflecting the payment on behalf of McKnight Man. The check payment to Centrue Bank made no reference to McKnight Man. The Credit Action Form relied upon by the loan committee listed properties as purported collateral for the LS loan but included no reference to McKnight Man or properties included in the McKnight Man development.

19. At the direction of Shaun Hayes, McKnight Man was never shown as obligated on the records of Excel Bank for the $906,223.38 payment. As a result, Shaun Hayes and Michael Litz, as guarantors of the loan at Centrue Bank that had been paid off, benefitted directly from that payment. Their liability on that note had been erased and Shaun Hayes and Michael Litz were not sued by Centrue Bank. In addition, since no loan involving McKnight Man was carried over to the records of Excel Bank, Shaun Hayes and Michael Litz made no payments to Excel Bank.

20. Shaun Hayes and Michael Litz caused false statements to be made to Excel Bank and false entries placed into the books and records of Excel Bank by causing the loan to LS to be recorded as an obligation when, in fact, $2,403,569.00 of the loan was for the benefit of Eighteen

Investments, $906,223.38 of the loan was for the benefit of Shaun Hayes and Michael Litz as part of McKnight Man and LS understood he had no responsibility for the loan.

21. Beginning in or about June, 2009, with the exact date unknown to the Grand Jury, and continuing up to and including October, 2012, with the exact date unknown to the Grand Jury, in the Eastern District of Missouri and elsewhere,

## SHAUN R. HAYES
## and
## MICHAEL H. LITZ,

the defendants, together with other persons known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud Excel Bank, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities and other property owned by, and under the custody and control of Excel Bank, by means of materially false and fraudulent pretenses, representations and promises.

22. It was part of the scheme that Shaun Hayes and Michael Litz jeopardized the financial soundness of Excel Bank by causing Excel Bank to purchase at a discount millions of dollars in notes and loans on which Eighteen Investments was delinquent, said loans and notes being adversely classified by regulators as substandard and harmful to the bank.

23. It was further part of the scheme that Shaun Hayes caused Excel Bank to enter into contracts with Centrue Bank and National City Bank to purchase pools of delinquent loans and notes and, further, he caused the contracts and transactions to be concealed from the Excel Bank Board of Directors and to be withheld from being recorded in the normal course of the bank's business.

24.     It was a further part of the scheme that Shaun Hayes and Michael Litz recruited persons to serve as borrowers on loans from Excel Bank which were made for the benefit of Eighteen Investments, Shaun Hayes and Michael Litz. These persons included nominees and straw parties and others who were acting for the benefit of Eighteen Investments, Shaun Hayes and Michael Litz. Underwriting safeguards designed to protect Excel Bank were not followed in making these loans. The totals of these note and loan purchases far exceeded the lending limit at Excel Bank for loans involving Eighteen Investments. Michael Litz and Eighteen Investments maintained complete control over the rents and profits from the properties listed as security for these loans. Michael Litz made virtually no payments on these loans from these rents and profits.

25.     It was a further part of the scheme that Michael Litz persuaded LS to sign a note for $3,344,528.27 to Excel Bank for the benefit of Michael Litz and Eighteen Investments. Michael Litz assured LS that he would not be held liable on the note and that he would receive $25,000.00 for helping Michael Litz and Eighteen Investments. Proceeds from this loan in the amount of $2,403,569.00, more or less, were paid by Excel Bank to Centrue Bank for the purchase of the pool of Eighteen Investments notes and loans which Shaun Hayes caused to be purchased by Excel Bank.

26.     It was a further part of the scheme that Shaun Hayes and Michael Litz caused proceeds from the LS loan in the amount of $906,223.00 to be paid to Centrue Bank in full payment of the delinquent McKnight Man loan at Centrue Bank. This payment was made for the direct benefit of Shaun Hayes and Michael Litz who, as guarantors on the McKnight Man loan, faced an imminent lawsuit by Centrue Bank.

8

27. It was a further part of the scheme that Shaun Hayes caused to be concealed from the Loan Committee and directors at Excel Bank the true purpose of the LS loan and the other loans at Excel Bank, the proceeds of which were used for the benefit of Shaun Hayes and Michael Litz. Due to Shaun Hayes's majority stock ownership position and his status as a consultant at Excel Bank, the use of the LS loan proceeds to pay Shaun Hayes's McKnight Man liability constituted self-dealing in violation of federal and state banking regulations.

28. It was a further part of the scheme that Shaun Hayes and Michael Litz caused false statements to be made to Excel Bank and false entries to be placed in the books and records of Excel Bank by causing the loan to LS to be misrepresented as a formal obligation when, in fact, $2,403,569.00 of the loan proceeds were paid for the benefit of Eighteen Investments and Michael Litz and $906,223.000 of the loan proceeds were paid for the benefit of Shaun Hayes and Michael Litz as part of McKnight Man.

29. It was a further part of the scheme that Shaun Hayes and Michael Litz controlled the LS loan and funds associated with that loan to meet expenses of Eighteen Investments and McKnight Man. Shaun Hayes and Michael Litz misappropriated $90,316.81 in escrowed fire insurance proceeds that were due to Excel Bank as a result of the purchase of the pool of loans from Centrue Bank. These funds were used to meet interest payment obligations owed by Eighteen Investments and McKnight Man.

30. It was a further part of the scheme that Shaun Hayes and Michael Litz misapplied $16,405.84 in proceeds of the LS loan to fund insufficient funds checks which Eighteen Investments had submitted to Excel Bank as payments on prior loans at the bank.

31. It was a further part of the scheme that Shaun Hayes and Michael Litz caused $99,266.46 to be added to the LS loan to pay delinquent real estate taxes owed by Eighteen Investments for

9

2007, 2008 and 2009 and to avoid foreclosure by St. Louis County on properties listed as collateral for the LS loan. LS was not made aware of this delinquency or this addition to the loan.

32. It was a further part of the scheme that Michael Litz and Eighteen Investments made no payments on the LS loan. Funds allocated to the LS loan were booked as an interest payment on the LS loan. Shaun Hayes and Michael Litz also brought in new individuals to borrow more money from Excel Bank on substandard "Friends of Shaun" loans to pay down portions of the LS loan and other outstanding loans relating to the Eighteen Investments loan pools. This was done in an effort to mislead the Excel Bank board of directors and bank regulators by falsely showing that the loans were being reduced in the normal course of business.

33. It was a further part of the scheme that, in an effort to avoid foreclosure by the bank holding the first deeds of trust on certain properties listed as collateral for the LS loan, Michael Litz arranged a substandard "Friend of Shaun" loan at Excel Bank in which Murdoch Management LLC, an entity formed by an associate of Michael Litz, was loaned a total of $726,700.00, more or less. These loan proceeds were used to eliminate first deeds of trust and, in addition, to pay principal and interest on the LS loan and to make payments on an outstanding judgment against Eighteen Investments that was unrelated to the LS loan.

34. It was a further part of the scheme that Shaun Hayes and Michael Litz attempted to ensure that the LS loan was documented in a manner that concealed the true purpose and nature of the LS loan from the Excel Bank board of directors and federal and state bank regulators. Michael Litz caused LS to sign extensions of the note with the continued assurances that LS would not be liable. In time LS became concerned and demanded to be released from the note. In October, 2010, Shaun Hayes and Tim Murphy caused a demand letter to be sent to an attorney

for LS in which the LS loan was declared to be in default and that it would not be renewed. In or about November, 2010, at a point when LS threatened a lawsuit, Shaun Hayes, Michael Litz and Tim Murphy agreed on behalf of Excel Bank to forego any collection action against LS for a period of time. This agreement was not presented to nor was it authorized by the board of directors. The declaration of loan default and the agreement to forego collection were concealed from the Excel Bank board of directors and the FDIC in December, 2010.

35. It was a further part of the scheme that Shaun Hayes attempted to conceal the status of the LS loan from the FDIC regulators in December, 2010. Shaun Hayes caused Timothy Murphy to prepare a Loan Status Report dated December 1, 2010 which supported the viability of the LS loan and which falsely stated that the "primary source of repayment will come from the borrower's cash flow" even though LS was denying liability on the note and there was an agreement to forego collection. The FDIC auditors discovered the challenge to the LS loan and adversely classified that loan and other "Friends of Shaun" loans involving Eighteen Investments as substandard.

36. On or about August 31, 2009, in the Eastern District of Missouri,

**SHAUN R. HAYES**
**and**
**MICHAEL H. LITZ,**

the defendants, acting individually and aided and abetted by one another and others, knowingly executed and attempted to execute the above-described scheme by causing checks in the amounts of $2,403,568.89 and $906,223.38 to be written from Excel Bank and paid to Centrue Bank.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

The Grand Jury further charges that:

1. The allegations set forth in paragraphs 1 through 20 and 22 through 35 of Count 1 of this indictment are hereby re-alleged and incorporated as though set forth in full herein.

2. On or about August 31, 2009, in the Eastern District of Missouri,

**SHAUN R. HAYES
and
MICHAEL H. LITZ,**

the defendants, acting individually and aided and abetted by one another and others, and acting with the intent to injure and defraud Excel Bank, an insured bank and a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, did willfully misapply moneys, funds and credits intrusted to the custody and care of Excel Bank in that the defendants caused Excel Bank to issue and pay a check payable to Centrue Bank in the amount of $906,223.38 as part of the LS loan which had the stated purpose of purchasing notes and deeds of trust when, as the defendants well knew, the check was paid for the direct benefit of Shaun Hayes and Michael Litz by paying off the McKnight Man loan at Centrue Bank on which Shaun Hayes and Michael Litz were guarantors.

In violation of Title 18, United States Code, Sections 656 and 2.

## COUNT THREE

The Grand Jury further charges that:

The allegations set forth in paragraphs 1 through 20 and 22 through 35 of Count 1 of this indictment are re-alleged and incorporated as though set forth in full herein.

1. In or about August, 2009, Michael Litz sought the help of LS, a friend, to assist him and his Eighteen Investments business which was in desperate financial condition. Acting for the

12

benefit of Michael Litz and Eighteen Investments and with assurances from Michael Litz that he would not be held liable on the note, LS signed a note to Excel Bank in the amount of $3,344,528.27. Well knowing that LS was, in fact a straw party and nominee, Shaun Hayes caused a Credit Action Form to be prepared at Excel Bank which was required for approval by the loan committee at Excel Bank. The Credit Action Form falsely stated that a source of repayment would be LS's cash flow. LS did not make that commitment and acted with the assurance that he would not be held liable on the note. In addition, knowing that the Credit Action Form did not include the fact that $906,000.00 of the proceeds of the LS loan would be used to pay off the McKnight Man loan at Centrue Bank, Shaun Hayes caused the omission of a material fact from the Credit Action Form.

2. On or about August 26, 2009, as part of the approval process for the LS loan, Shaun Hayes caused Timothy Murphy to make representations to the loan committee at Excel Bank which Shaun Hayes knew to be false in that: (1) LS was identified as the buyer of certain notes and deeds of trust when, in fact, Shaun Hayes caused Excel Bank to buy the notes from Centrue Bank; (2) the loan was to be secured by the assignment of certain notes and deeds of trust when, in fact, no such assignments were made for the benefit of LS and no public filings of assignments were made for the protection of Excel Bank or LS; and (3) Shaun Hayes caused the omission of the material fact that $906,000.00 in the LS loan proceeds would be used to pay off the McKnight Man loan.

3. On or about August 25, 2009, in the Eastern District of Missouri and elsewhere,

**SHAUN R. HAYES,**

the defendant, acting with the intent to injure and defraud Excel Bank, an insured bank the deposits of which were insured by the Federal Deposit Insurance Corporation, and to deceive any

13

officer of Excel Bank and any agent and examiner appointed to examine the affairs of such bank, knowingly caused to be made a false entry in the books, reports and statements of Excel Bank, in that, in order to obtain approval of the LS loan, he caused to be prepared a Credit Action Form which falsely states that LS was acquiring certain notes and deeds of trust when, in fact, Excel Bank was acquiring them and that LS's cash flow would constitute a source of repayment when, in fact, LS made no such commitment, and he further caused to be omitted from the Credit Action Form the material fact that a substantial amount of the loan proceeds would be used to pay off the McKnight Man loan at Centrue Bank.

In violation of Title 18, United States Code, Section 1005.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
JAMES E. CROWE, JR. #6674MO
Assistant United States Attorney